Good morning, Your Honor. May it please the Court. My name is David Chuzz and I represent the appellant, Samuel Stephens. We request this Court reverse the 2-1 decision of the Railroad Retirement Board and remand to determine the amount of benefits to which Mr. Stephens is entitled because the Board's decision was reversible error and was not based on substantial evidence and was arbitrary. It's long been established in multiple circuit courts, including the Ninth, that work performed outside the guidelines of the Social Security Administration is not necessarily substantial gainful activity. And the case most on point is Goodwin. This is a Fifth Circuit case, 1977, where the claimant worked for six years. Mr. Chuzz, can I just ask you this question? If I understand correctly, and I'm looking at 1ER 4-5, the RRB has established certain criteria for determining whether a person is engaged in, in quote, substantial gainful activity. And they specifically have found that if there's evidence of a person earning more than $300 a month on average while working, that is gainful activity. The Social Security records in this case, as I understand it, show that Mr. Stephens earned $4,946 at Harston Hall in 1987, and that's at 3ER 50. He earned $1,186 in 1987 and $4,124 in 1988 from Park America, and that's at 3ER 50 through 51. And in 1989, he earned $4,615 while working for Days Inn, and that's at 3ER 51. Under the circumstances, unless the regulation is invalid, isn't that the end of the story? No, Your Honor. First of all, I'd like to point out that the, between the years, the Social Security records, and this is at, I don't have the ER record, but it's page 64 of the, actually it's volume three, volume three. The Social Security earnings records show between 1986 and 1999, I'm sorry, 2003, an 18-year period, a total earnings of only $131,000, which averages out to about $150 a month. Are there any rules, any regulations that determine what the time period is here? And my understanding is that at any year during the period, that's it. You've got three years where the $300 plus was met. Do you have some case law that indicates that you can basically change the time period covered and determine, instead of saying it's $500 a month or whatever, that over a 20-year period where he didn't work for a while, that it's less than $300? Yes. It doesn't say that it has to be averaged over one year. It just says it has to be an average of less than $300 a month for that time. They did that. They said over this three-year period, he earned more. Yes. And I can also average it over a longer period and show that the record is very clear that he had many, many years of zero income or much less than the $300 a month and averaged out at $154. But that's not my main point, Your Honor. No, I understand it's not your main point. I'm just saying under the circumstances, the have a gainful employment. I'm not looking for the exact wording here, but the idea is that they have such condition that he or she is unable to engage in any regular employment, and the regular employment is what the $300 a month and other things talk about. Yes. Basically, what it is is an issue of whether six months or not, and that seems to be how this average is established, I imagine, is that if a person works for more than six months, it's considered substantial gainful activity without any further discussion. If it's less than six months, then they look at, you know, is it two months or not. So we'd imagine six months would be the averaging period. But the regulation doesn't actually say that for the averaging. It just says it's average. And that's why I'm pointing out, in answer only to your question, that it appears to be that the average sort of is how long do you want to do that. You could probably work for 30 years at $299 a month and be eligible and have far more income than Mr. Stevens had simply because he had a few years of bunched up activity, very much like the cases at point that I, of course, would love to have you to look at, the Goodwin case, the Estes case, and the Parrish case, where the individual did work for many years. In Goodwin's case, with a mental disability similar to Mr. Stevens, he worked for six years. And the court still found that he was eligible for benefits. And the court and the board had basically erred in denying him his benefits. Is that the sheltered employment case? Yeah. It was sheltered, but it wasn't an official shelter. It was a sympathetic supervisor. And again, we don't believe in Mr. Stevens' case that we need or must provide evidence, a documentation that this was a sheltered workshop for Mr. Stevens. We just need to show that his testimony was that he worked in situations where he continually was given less and less duties as he was unable to perform them. He was fired or let go or quit because he could not get along with workers. He was given reduced activities because he couldn't keep up with the others. And he still got into fights with the others because they had to do his extra work for him. Isn't there a suggestion in the case law at least that the employment has to be, he has to be not only gainfully employed, but successfully employed? Well, the success comes from, I think, the number of months. So if you work more than six months, it's considered successful regardless. I guess if he worked for six months and one day and was fired, that's successful. But if it's five months and 29 days, it's not. And I'm not quite sure how that works. That doesn't make a lot of sense. No, it's not your most clear. It's also actually, looking at it quite honestly, a vague standard that apparently the courts have had no trouble getting around by simply saying there's a good reason why the individual couldn't work. In Mr. Goodwin's case, he had a mental disability. In Mr. Stevens' case, he had a similar type of mental disability. Well, there are two parts to this. One is the one we've been talking about, which is the employment. And the second part is that he has to show that he was, well, let me restate this. Substantial evidence in this case suggests that he wasn't disabled before age 22. And I'd be interested to indicate, for you to indicate to me, what evidence you think there was that he was disabled before that time. Yeah, I think there's actually very clear evidence in the record. The school psychologist who evaluated him and determined that he was not suitable for continuation in the Philadelphia Public Schools. Who is that? I see the Stevens report. I see Dr. Wright, Dr. Smith. And if those don't say he was disabled, then he couldn't work. Actually, Dr. Smith does say that, well, first of all, Dr. Smith was evaluating a student, so there's no issue of can he work or not. Okay, but that doesn't prove one way or another that you're saying, right? No, it goes to the diagnosis, or if you will, the symptomology of severe psychosis at an early age. Does the record, he was sent to a special school. Yes, Delta School. Delta School. Does the record indicate what that school's for? I couldn't quite... It was for severely disabled, emotionally, academically challenged children. It's a special education opportunity, which he failed to graduate from because he couldn't perform at the special educational level. He missed two grades. He had to repeat two grades. Did the board make a finding that he had no disability before 22? Yeah, they did that, and the reason they did that was they discounted the school psychologist who basically said that this individual had a tenuous grip on reality, withdraws into fantasy, has severe emotional problems, and requires professional intervention. The fact is the psychologist did not give a label, which the later psychiatrist, Dr. Robichinsky, did of severe... That's why they discounted it, because there wasn't a label to it? Yeah, they said it wasn't a diagnosis. They also discounted the MD who examined the child in conjunction with his application for the Delta School who simply said that it appears that the individual had severe emotional maturity problems or lack of maturity problems, but again, there was no diagnosis. And I don't think, again, if you look at the regulations and the law, there's no requirement that there be a diagnosis by an MD or a... In other words, you don't need the label of bipolar disorder placed before age 22. The fact is Dr. Robichinsky made that evaluation, and then Dr. Abelofia, reviewing all of the records, extended it backwards and said it hasn't changed since he was a child. And these were made 30 years ago? No, the school psychologist was 30 years ago. The two recent ones, Dr. Abelofia and Dr. Robichinsky, Dr. Robichinsky is the treating psychiatrist. Dr. Abelofia is treating him for hepatitis C, HIV, and kidney dialysis issues. And he has to know whether the individual had mental disability because he wanted to give interferon, a drug which causes mental problems. He did a complete evaluation of all the records and came up with an opinion which states Mr. Stevens had been severely mentally disabled since childhood, continuously. My question, I'm sorry, my question meant simply that the discussion about his condition pre-22 was 30 years ago before we had a lot of these kinds of diagnoses and words about... Correct. We have a school child who may not be given the benefit of a full workup. We have a poor child in Philadelphia schools who doesn't really understand. We have a mom who thinks he's just a problem kid and doesn't quite understand why she's called in every other day to school to deal with the problem child. Yeah, we don't have a clear diagnosis. And I don't know that back in the 1980s it was impossible to get the severe schizophrenia or schizoaffective behavior diagnosis that we have today. I believe the medical science has, of course, changed and improved over the years. But I think there's enough in the record to indicate a psychologist found him to be tenuous in terms of his ability to deal with reality and withdraw it into fantasy, needs professional intervention, is equivalent to a diagnosis, which he was later given a label of schizoaffective behavior or bipolar disorder. Even the psychiatrist today couldn't quite exactly say which of the two it was. This is not like a broken bone or a fracture. We're dealing with a mental problem. Do you want to save your last three minutes for rebuttal? Yes, I would, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, my name is Michelle Bopp, Counsel for the United States Railroad Retirement Board. The appeal before you today is whether there was substantial evidence in the record to support the finding that Mr. Stevens was not eligible for an adult child disability annuity under the Railroad Retirement Act. In order to qualify for such an annuity, not only do you have to be disabled currently, but Section 2D of the RRA and the accompanying regulations say that a surviving adult child of an employee covered by the RRA must be disabled as defined by the Act prior to attaining age 22 continuously through the time of application for benefits. The Railroad Retirement Board contends that Mr. Stevens did not meet his burden of proving through medical evidence that first, he was disabled prior to age 22 and second, he was continuously disabled through the date of application. And disability, as I understand it, in both settings is defined in terms of the ability to do substantial gainful activity, is that right? Correct. It is an impairment which prohibits an individual to participate in any regular employment and any regular employment is considered substantial gainful activity. One of the objective criteria that we use in order to determine whether a person is able to engage in activity that is both substantial and gainful are earnings. And if they earn over a certain amount, it's presumed that they're able to engage in substantial gainful activity lacking a showing that they're in some sort of sheltered work environment where their earnings are subsidized. And as I understand it, there's no claim of this is a sheltered or subsidized situation here with Mr. Stevens' employment. So, your opponent indicated that over like a 20-year period, if you take that period, that it's less than $300 a month. How does the board cabin how long you're talking about, is it a year-by-year basis? And if so, is there a regulation that says that or just practice or what happens? Annual earnings is what we look at. And what's the site on that? If you look at 20 CFR 220.143, the Evaluation Guidelines for an Employed Claimant, it sets out a table and it says before the table it states, the amount established by the Social Security Administration to constitute substantial gainful activity for each such year and then it lists each year. So had Mr. Stevens had even just one year in which he met the $300 plus, then he would be disabled would not be disabled, is that correct? There is case law under Social Security which interprets the rule accordingly. As a matter of fact, Byington, the case that I cited in my brief, that individual had substantial gainful employment for only one year was over the substantial gainful employment limits for only one year and they found him able to engage in substantial gainful activity. Mr. Stevens was born on March 29, 1961. Thus, the evidence of the record must show that he was continuously disabled from prior to March 29, 1983 through his application in April of 2008. The claimant for disability annuity is responsible for providing evidence of the claimed disability. It must be medical evidence showing that he or she has an impairment as well as how severe it must be. An impairment must result from an anatomical, physiological or psychological abnormality which is demonstrable by medically acceptable clinical or laboratory techniques. An individual is considered disabled if their physical or mental condition is such that he or she is unable to engage in any regular employment. Mr. Stevens is not established through medical evidence that he was disabled prior to age 22. Do you agree with your adversary? Why was he not disabled before 22 when he had to go to special schools? Well, quite frankly, going to a special school does not rise to the level of a physical or mental impairment as defined by the Act. Your Honor, there is evidence in the record that he had problems in school and that he had emotional problems. I'm arguing that that doesn't necessarily rise to the level of a mental impairment. And even if it does rise to the level of mental impairment, it doesn't mean that it's one that he can't engage in any regular employment. There are people who have mental impairments that are able. In addition, the record also shows that Dr. Wright, the psychiatrist who evaluated him at the time, made a finding, a specific finding, that there were no signs or symptoms of mental illness, psychosis, or severe emotional... So basically, we don't really know, as Judge Schroeder indicated, the terminology's changed a lot, but you might have had somebody who had some of the common issues like autism or something like that at some level. We just don't know. But the reality is you have Dr. Rice's view that there was no regular mental illness. He had some problems. Right. And when he was at the Delta School, it shows that he did have some improvements in his school records. He had an 80% in his reading ability. His IQ was still within the borderline range. There is no definitive proof, and lacking that kind of proof, the hearings officer had... Did he successfully complete the Delta School? No. He did not finish school. But again, Your Honor... So you have somebody with intelligence. His intelligence level appears to be... There's a lot of stuff in there about how his IQ measures very low, but they think that he's not really that unintelligent. But he doesn't function in school. He can't successfully function in school. Well, again, Your Honor, there are two things. He doesn't. Right. But we don't know why. We don't know if that's because of an impairment or because of emotional problems. There are teenagers who... Emotional problems and not impairments? Not necessarily. It has to be a physical or psychological abnormality. There are teenagers who have problems who don't necessarily have a mental illness. And the burden, I gather, is on the applicant here to... Yes. The burden is on the applicant to prove through medical evidence that there was an impairment. And prior to... There is not sufficient... If he's disassociated from reality, all these words sound like someone with an impairment. So you must be saying that there wasn't a magic... that a psychopathic or something or other... Well, yes. A doctor... A doctor did see him and did give him a diagnosis of adolescent adjustment disorder and made a specific finding that there was no signs or symptoms of mental illness. And it was reasonable for the hearings officer to conclude that considering all the evidence at hand, that there was not sufficient evidence to prove that he had an impairment prior to age 22. And in addition, even if he had, he was able to engage in substantial gainful activity after turning age 22. Not only did he work for those three years over the substantial gainful activity limit, he had 25 qualifying quarters for Social Security purposes. He's receiving a Title II disability annuity based on his own earnings record. He is also receiving SSI. This annuity is made for children who are disabled, whose parents die and have no form of support. And because they're disabled, they're not able to establish a work history. In this case, he has been able to establish a work history, and he's receiving disabilities based on that. So is there a limit if you're disabled now and you're receiving SSI and other disability benefits, that that disqualifies you from... There's no disqualification. This is considered a Social Security equivalent, though, and whatever the amount is that he would receive would be reduced dollar for dollar for whatever he's getting in SSDI. Am I correct that he was fired from several of those jobs? Yes. Okay. Yes. So the seriatim worked at jobs enough quarters to get Social Security? Correct. And did I make sure I understood you correctly that this is supposed to work in tandem with SSI, right? I mean, with the disability income from Social Security, right? No, this is a separate... I know it's a separate program, but I thought you were getting Social Security disability income, and he'd probably get something under here. It would be reduced dollar for dollar. Did I misunderstand you? I don't believe it would affect his SSI, but the Title II Social Security disability annuity that he's... insurance that he's getting, because that's under Title II, and that's based on his earnings record. The point of the RRA is to... The point of this part of the RRA is to put these children in the same position they would have been if their parent had been an employee receiving Social Security benefits. So in order to not duplicate those benefits, some of our annuities are reduced, but if the annuitant is also receiving Social Security. Does the Court have any other questions? No, thank you. For the foregoing reasons and the reasons in the brief, we respectfully request that you find that there's substantial evidence in the record to support the Board's finding. Thank you. Thank you. I do have a brief rebuttal, Your Honor. First of all, the 20 CFR and the other regulations cited by my opposing counsel are guidelines only. They're not in the form of absolute requirements. It's not a mathematical formula. The Railroad Retirement Board, in its discretion, can overlook them. The Courts of Appeal, reviewing cases like Parsons, Estes, did in fact overlook these strict monetary guidelines of annual averaging. We also have the issue that he did not graduate from the Delta School and he has continual problems dealing with people in his work environment. He's improved slightly over the years, but only because of intense psychotherapy, which he's going under now by Dr. Robichinsky. Sounds like members of Congress. I don't want to make a comment about any of that. Basically, what we have is an individual here who has made an attempt in the 1980s to support himself. He had no father. The father had passed away. He wasn't giving him any income, so he was trying to make it on his own. He made several attempts, all failures. After that, very, very little income. And within the last, I guess, 15 or 20 years, it's been zero for many, many years. He's living in a subsidized housing. He gets food stamps. He gets his medical care provided. Basically, he has almost no income. I also want to point out that there was error on the part of the hearing examiner. I think this is almost the most important thing. She discounted his testimony because of lack of credibility, but never made an effort to examine or identify by questioning or any other method whether or not his mental disability, the actual diagnosis at the time of the hearing, schizoaffective disorder or bipolar disorder, affected his ability to answer. He even stated in the record that he could not take antipsychotic medications because of his kidney failure. So we have a person sitting there in the hearing who can't remember if he worked six months or seven months, and that's actually being held against him by the hearing examiner. I think that's actually egregious error, and that alone is the basis for stating reversal and remanding. We have several cases, the Parish case, the Estes case in the Ninth Circuit, which said, oh, by the way, that annual averaging doesn't really matter if the person made a good attempt to work, but it kind of failed even after. Is that the multiple sclerosis case? Yeah, the multiple sclerosis case that comes and goes. We don't have any specific medical testimony that says this individual has periods where he's well and is able to work, say, in the 1980s and then not so well in the year 2000, etc. But you still have that same kind of in the Ninth Circuit, which says the limits proposed by the Social Security Administration are only guidelines, and the court and the board in its discretion can basically waive them. So if you have no further questions, I think I'm done, Your Honor. Thank you, counsel. The case just argued will be submitted. The court will stand in recess for the day. All rise.
judges: Schroeder, Reinhardt, Smith